KENTUCKY-TENNESSEE LIGHT & POWER CO. *v.* BEARD.*

## (*Jackson.* April Term, 1925.)

1. **PLEADING. Leave to amend after entry of consent decree properly denied.**

Where, in condemnation proceeding by light and power company, consent decree was entered vesting petitioner with easement on described strip, leave to amend petition thereafter to sue for right of way of less quantity than that described in petition was properly denied, as consent decree was not open to reconsideration. (*Post, pp.* 353-355.)

Cases cited and approved: Railroad v. Memphis, 126 Tenn., 294; Lewisburg & N. R. Co. v. Hinds, 134 Tenn., 293; McKinney v. Nashville, 102 Tenn., 131; Alloway v. Nashville, 88 Tenn., 510.

Cases cited and distinguished: Williams v. Neil, 51 Tenn., 279; Woodfolk v. Railroad Co., 32 Tenn., 437.

Constitution cited and construed: Art. 1, sec. 21.

2. **EMINENT DOMAIN. Petitioner held liable, as though fee had been taken in condemnation proceedings.**

Where electric light and power company, in condemnation proceedings, acquired a permanent easement in strip of land described in its petition, and in consent decree entered in the case, it became liable for value of that strip, as if fee had been taken, in view of Constitution, article 1, section 21, and Thompson's-Shannon's Code, section 1857. (*Post, pp.* 356-358.)

(348)

Light & Power Co. v. Beard.

Cases cited and approved: Railroad v. Telegraph Co., 101 Tenn., 62; Lambeth v. Power Co., 152 N. C., 372.

3. **EMINENT DOMAIN.** Uses which defendant might make of land burdened by permanent easement not available in reduction of his compensation.

Where electric light and power company, in condemning a strip across defendant's land, acquired a permanent easement, and had right to exclude defendant therefrom entirely, uses which defendant might make of such strip were merely permissive, and cannot be availed of in reduction of defendant's compensation. (*Post, pp.* 358, 359.)

---

*Headnotes 1. Pleading, 31 Cyc., p. 405; 2. Eminent Domain, 20 C. J., Section 193; 3. Eminent Domain, 20 C. J., Section 258.

---

### FROM WEAKLEY.

---

Appeal from the Circuit Court of Weakley County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. L. E. ELKINS, Judge.

J. W. RANKIN and W. R. McWHERTER, for appellant.

R. E. MAIDEN, for appellee.

MR. JUSTICE HALL delivered the opinion of the Court.

This was a condemnation proceeding instituted in the circuit court of Weakley county by petitioner, Kentucky-Tennessee Light & Power Company, who will hereinafter be referred to as petitioner, against O. R. Beard, a landowner of Weakley county, who will hereinafter be referred to as defendant, for the purpose of appropriating to the use of petitioner a right of way through a certain tract of land owned by defendant and located in the Eighth civil district of Weakley county. The right of

way sought by petitioner is to be used for the construction of its high power transmission lines in the distribution of electric current to its patrons. A jury of view was appointed in the usual way, a report made, and an appeal from the finding of the jury of view to a trial by a regular jury in the circuit court.

At the next regular term of court following the filing of the report of the jury of view the parties appeared in open court, produced and had entered a consent decree, reciting all preliminary steps taken in the cause up to the filing of said report. This consent decree contained the following adjudication:

"And it further appearing to the court from the sheriff's return and from the report of the jury of inquest that said jury set apart to the plaintiff in accordance with its petition and prayer a strip of land located in the Eighth civil district of Weakley county, Tenn., across the defendant's land a distance of 3,750 feet and running between parallel lines 100 feet wide, or fifty feet on either side of the pole line now established in the center of said 100 foot right of way. . . .

"Said strip of land is 100 feet wide and runs from north to south between parallel lines the distance mentioned. It further appears to the court that the plaintiff, being dissatisfied with so much of the verdict of the jury as assessed the defendant's damages in the sum mentioned, has appealed from that part of the finding of the jury so fixing the damages, and in addition to the ordinary appeal bond, and in addition thereto, has executed and filed a bond in double the amount of the assessment of the jury of inquest payable to the defendant and conditioned to abide by and perform the final judgment of the court in the premises, and after the execution of

said bond entered upon and is now in possession of said strip of land for right of way purposes, all of which is adjudged."

The decree divests title out of the defendant and vests it in the petitioner as an easement for right of way purposes, and then recites:

"This decree is made and entered by consent of the parties hereto, leaving open the question of defendant's compensation and damages to be determined by a jury in the usual way on the plaintiff's appeal from the finding of the jury of inquest."

The case was then tried to a jury upon the question of damages alone, which trial resulted in a verdict in favor of defendant and against petitioner for the sum of $525, as the value of the land taken, and the further sum of $25, as damages to growing crops, or a total of $550.

Both parties entered motions for new trials, which were overruled, and judgment being entered in accordance with the verdict of the jury, both parties prosecuted appeals from said judgment to the court of civil appeals, and assigned errors. That court overruled the assignments of error filed by petitioner, but sustained the sixth assignment of error filed by defendant, which was as follows:

"The court committed affirmative error prejudicial to the defendant in charging the jury as follows:

" 'In this case the plaintiff is not bound to pay the full value of the land taken, but is bound to pay the decrease in the market value of a strip 100 feet by 3,750 feet that is due to the imposition of the proposed improvement; in other words, in awarding compensation to the defendant for the value of the easement in said strip of land, the value of the interest, if any, in the lands re-

maining to the defendant, is to be deducted from the fair market value of the strip of land appropriated. The jury, in fixing the compensation of the defendant for the strip of land taken, will first determine what the fair, cash, market value of said strip of land was before it was appropriated, and then fix the value of the interest in said strip of land remaining to the owner, if any, and deduct the latter from the former, and the difference will be the defendant's compensation for the strip of land appropriated. The only way to arrive at these value is to estimate the specific identical part appropriated by placing values upon it.' ''

The court of civil appeals for said error reversed the judgment of the trial court and remanded the case to the trial court for a new trial, being of the opinion that defendant is entitled to recover the fair cash value of the land appropriated by petitioner, and not the mere value of the easement acquired by petitioner in said land.

To the action of the court of civil appeals sustaining the above assignment of error of the defendant, reversing the judgment of the trial court and remanding the case for a new trial, and to the action of the court of civil appeals overruling its assignments of error filed in that court, petitioner has filed its petition in this court for a writ of *certiorari,* and the case is now before us for review.

Through its first assignment of error petitioner insists that the court of civil appeals erred in sustaining the defendant's sixth assignment of error.

Through its fifth assignment of error petitioner insists that the court of civil appeals erred in holding that defendant was entitled to recover the fair cash value of

the land appropriated by petitioner, and not merely the fair cash value of the easement which it acquired.

Other assignments of error are urged by petitioner, and we have carefully examined them all, but are of the opinion that none of them are well taken, and they are overruled without further elaboration. The two assignments of error above mentioned present the only material question in the case. We will, however, more specifically refer to petitioner's third assignment of error. This is to the effect that the court of civil appeals erred in not holding that the trial court committed error in not allowing petitioner to amend its petition so as to sue for a right of way of less quantity than that described in its petition, and to aver that it only needed and sought to condemn sufficient land of defendant upon which to erect its poles with an additional right of egress and ingress. The court overruled and disallowed this amendment, for the reason that it came too late, to which action of the court petitioner excepted. The court of civil appeals was of the opinion that petitioner was bound by the consent decree which could only be impeached for fraud, and was not open to reconsideration by the court. In this conclusion we think the court of civil appeals was correct.

In *Williams* v. *Neil,* 4 Heisk., 279, it is said: "It is well settled that there lies no appeal or rehearing from a decree by consent, and such decree can only be impeached by an original bill in the nature of a bill of review, when it has been obtained by fraud or imposition. This is the result of all the authorities on this question."

Several authorities are cited in the opinion to support the holding of the court above set out.

152 Tenn.—23.

Our Constitution, article 1, section 21, reads as follows: No man's property "shall be . . . taken or applied to public use without the consent of his representatives or without just compensation being made therefor."

The statute provides that: "In estimating the damages, the jury shall give the value of the land without deduction, but incidental benefits which may result to the owner by reason of the proposed improvement may be taken into consideration in estimating incidental damages." Thompson's-Shannon's Code, section 1857.

In the instant case the jury did not find that defendant had sustained any incidental damages.

In *Woodfolk* v. *Railroad Co.*, 2 Swan, 437, which is, perhaps, the first case appearing in our reports upon this question, the rule is stated as follows:

"We consider the proper rule to be this, that the fair cash value of the land taken for public use, if the owner were willing to sell, and the company desired to buy that particular quantity, at that place and in that form, would be the measure of compensation."

The court is that case further said: "We are aware that in some of the States contrary and conflicting views have been entertained on some of the points now decided. It would be a useless extension of this opinion to review them, as it could be productive of no advantage. The diversity presented may be partly attributed to the different constitutional provisions on the subject, and to the fact that some of the State Constitutions are entirely without any such provisions. And, again, the legislative enactments, and the form in which the questions have been presented to the courts, have been so variant and

dissimilar that the diversity seems, at first view, to be greater than it really is, upon closer examination.''

The rule announced in the Woodfolk case was followed in *Railroad* v. *Memphis,* 126 Tenn., 294, 148 S. W.; 662, 41 L. R. A. (N. S.), 828, Ann. Cas. 1913E, 153; *Lewisburg & N. R. Co.* v. *Hinds,* 134 Tenn., 293, 183 S. W., 985, L. R. A., 1916E, 420; *McKinney* v. *Nashville,* 102 Tenn., 131, 52 S. W., 781, 73 Am. St. Rep., 859; *Alloway* v. *Nashville,* 88 Tenn., 510, 13 S. W., 123, 8 L. R. A., 123, and other cases.

In volume 10 of Ruling Case Law, p. 133, section 117, it is stated that in ordinary cases, where condemnation for a right of way is sought, evidence is permitted to show, as the damages sustained, the full value of the land taken, upon the theory that the easement will be perpetual; that the right of way acquired, though technically an easement, will be permanent in its nature, and the possibility of abandonment by nonuser so remote and improbable as not to be taken into consideration; that the exercise of the right will require practically the exclusive use of the surface; that any interest which might be reserved to the owner in the fee would only be a nominal one and of no value; and that privileges which are merely permissive and subject to the paramount right of revocation by the condemning party cannot be availed of in the reduction of damages.

In 20 Corpus Juris, 726, it is said: ''Where by virtue of the power of eminent domain the right is acquired to occupy and use the surface of land perpetually for a given purpose, the bare fee left in the owner is for all practical purposes valueless, and it is not error to assess the damages as if a fee were taken.''

We think petitioner having acquired a permanent ease-
ment in the strip of land mentioned and described in its
petition and in the consent decree entered in the case, it
became liable for the value of that strip as if the fee had
been taken. The right of petitioner to use this strip for
all the purposes of its business, and to control it and limit
the right of the defendant in its use, is fixed by law. De-
fendant must obtain his compensation now for the prop-
erty taken from him, and, if he fails to obtain adequate
compensation in this proceeding, he will be without rem-
edy hereafter. The power company has the unquestioned
right to occupy the whole of said strip of land at any time
the exigencies of its business may demand such occu-
pancy. It has the right to exclude the owner from the
strip when necessary. It has a right always to enter
upon the strip for the purpose of improving, repairing,
and building additions to its line or lines, and, if neces-
sary, destroy any crops that may be growing thereon.
Any right the owner has to use the premises is subordi-
nate to the prior and superior rights of the power com-
pany. The owner has lost his right to build houses,
fences, and other structures upon said land. He has lost
his right to grow timber upon it. His interest in the
property has been reduced to that of a servient estate sub-
ject to the rights of petitioner, and petitioner may exclude
him absolutely from said premises at any time the exi-
gencies of its business may require.

Petitioner, in support of its contention that the court
of civil appeals erred in holding that the trial judge com-
mitted error in instructing the jury as set out in defend-
ant's sixth assignment of error, and in holding that de-
fendant was entitled to recover the fair cash value of the

land appropriated by petitioner, and not merely the value of the easement acquired, relies on a number of cases from other States.

We have examined these cases, and find that practically all of them are cases involving the right of the condemning party to acquire an easement upon an easement, such as the right of a telegraph company to acquire a right of way or easement upon the easement of a railroad company, and the measure of damages in such cases.

In 10 Ruling Case Law, p. 152, section 134, the rule is announced that, when a telegraph company acquires by eminent domain the right to construct and maintain its line along a railroad right of way the measure of damages is the same as in all cases where there is an imposition of one public easement upon another. The railroad company is not entitled to recover the market value of that portion of its right of way which is occupied by the poles and wires of the telegraph company, its compensation being limited to the decrease in the value of the use of the right of way for railroad purposes by reason of its being concurrently used for telegraph purposes, and if, in any particular case, the railroad company is unable to show that any such decrease in value would arise, it is entitled to recover only nominal damages.

To the same effect is the holding of this court in *Railroad* v. *Telegraph Co.,* 101 Tenn., 62, 46 S. W., 571. In that case it was held that only nominal damages could be given the railroad company for the use by a telegraph line of the space occupied by its posts and wires along the railroad right of way through an agricultural section of the country, when the use and occupation of the right of way for railroad purposes was not transferred

or incumbered in any way. In that case it was held that the railroad company did not have an estate in fee in the land occupied by its right of way, but only an easement, and this only for railroad purposes; that it could not sell, transfer, incumber or use its right of way except as its necessities and convenience might demand for the proper operation of its road. Therefore its right of way could have no market value, because it could not be placed upon the market either at private sale or public outcry. The court was careful to say in that case that it was not dealing with the rights of holders of contiguous land, who owned the fee in the lands over which the railroad has its right of way; that such rights were in no wise involved and were not passed upon.

We are of the opinion that this case and the other cases relied on by petitioner are not controlling in the instant case for the reasons above stated. The only case cited by petitioner, which seems to support its contention, is that of *Lambeth* v. *Power Co.*, 152 N. C., 372, 67 S. E., 921. The opinion in that case does not show in what form the question was presented, nor the constitutional provision and legislative enactment which controlled the conclusion reached, and no authority is cited to support it.

We think, in view of the fact that petitioner has acquired a permanent easement in the land appropriated, and such uses which defendant may and is making of the land burdened by said easement are merely permissive and subject to the paramount right of revocation by petitioner, they cannot be availed of in reduction of the defendant's compensation. Petitioner has the right at any time the exigencies of its business may require to plant other poles and locate other lines and structures

---

Light & Power Co. v. Beard.

---

along and on its right of way or easement acquired in said strip of land, and to exclude the defendant therefrom entirely.

We are of the opinion, therefore, that there is no error in the judgment of the court of civil appeals, and the writ of *certiorari* is denied.   The petition to rehear is dismissed.